**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHELDEANGELOU PERFVWAYBELAYOUIX,<br><br>    Plaintiff<br><br>v.<br><br>AUBREY GRAHAM-DRAKE, *et al.*,<br><br>    Defendants | Civil Action No. 22-1019 (CKK) |

**MEMORANDUM OPINION**
(December 1, 2022)

Plaintiff Micheldeangelou Perfvwaybelayouix ("Plaintiff"), proceeding *pro se*, filed a Complaint in this case against Defendants Aubrey Graham, Universal Music Group ("UMG"), Republic Records, and OVO (together, "Defendants") alleging copyright infringement of his song "Reach for the Skies." *See* Compl. at 1–2. Defendants filed the pending [43] Motion to Dismiss under Federal Rules of Procedure 12(b)(6) and 8 or, alternatively, for Summary Judgment under Rule 56. Defendants argue that Plaintiff failed to allege plausibly any required element of a copyright infringement claim: ownership of a valid copyright, Defendants' access to Plaintiff's song, and substantial similarity between Plaintiff's song and Defendants' song. Defs.' Mot. at 1. Defendants also argue that Plaintiff failed to allege facts to put each Defendant on notice of the claims levied against them. *Id.* at 14. Finally, Defendants assert that the Court should dismiss Plaintiff's Complaint with prejudice in light of Plaintiff's inappropriate communications with both Defendants' counsels and this Court. *Id.* at 16.

Upon consideration of the pleadings, [1] the relevant legal authorities, and the record for purposes of this motion, the Court finds that while Plaintiff does allege ownership of a valid copyright, he does not allege facts to show Defendants' access to Plaintiff's song nor substantial similarity.  The Court also finds that Plaintiff did not provide sufficient notice to Defendants to satisfy Rule 8.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety.  The Court DISMISSES Plaintiff's Complaint under Rule 12(b)(6) and Rule 8 and, as additional grounds, DISMISSES WITH PREJUDICE Plaintiff's Complaint as a sanction for Plaintiff's repeated misconduct.

## I. BACKGROUND

### A. Copyright Infringement Lawsuit

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint.  The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

On April 12, 2022, Plaintiff filed a three-page Complaint stating that he was "suing for intentional copyright infringement over the song, 'Way 2 Sexy' by Drake featuring Future & Young Thug."  Compl. at 1.  Plaintiff alleges that he had "evident proof of intentional copyright infringement & will provide evident proof upon hearing."  *Id.*  Plaintiff alleges he had "a

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Compl. ("Compl."), ECF No. 1;
- Pl.'s Mot. for Ruling ("Pl.'s Mot.), ECF No. 11;
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 43;
- Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Resp."), ECF No. 46; and
- Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 47.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

registered form of lyric" and that the song "Way 2 Sexy" "would not be a song created… if not been for my dealings with its music label." *Id.* The dealings to which Plaintiff refers are the uploading of his song "Reach for the Skies" to the website Spinnup. *See id.* at 2; Pl.'s Mot. at 2 (describing Spinnup), 4 (screenshot from Spinnup), 5–7 (screenshots of emails between Plaintiff and Spinnup), 11 (referencing "[t]he service Spinnup of UMG"). Spinnup is an Internet platform owned by Defendant UMG. *See Spinnup*, Universal Music Group, https://www.universalmusic.com/label/spinnup/ ("Spinnup is a fully curated artist discovery and distribution platform created by Universal Music. Spinnup works with select independent artists to capture the attention of UMG's labels and create opportunities for these artists within Universal Music and beyond."). As Defendants explain, "[w]hile Spinnup is now available only to artists via invitation, UMG previously allowed anyone to upload music to the platform." Defs.' Mot. at 2 n.2.

On June 13, 2022, Plaintiff filed a Motion for Ruling, in which Plaintiff provided the lyrics to "Reach for the Skies" and "Way 2 Sexy" with various words and phrases emphasized in italics, underline, bold, and different color font. Pl.'s Mot. at 8–10. In this motion, Plaintiff described alleged comparisons between the two songs' lyrics. *Id.* at 10. The Court denied the Motion for Ruling as it was unable to discern what relief Plaintiff sought other than a "ruling" in his favor, which was premature at such an early state of litigation. Order, ECF No. 13.

On August 5, 2022, Defendants filed the pending Motion to Dismiss under Federal Rules of Procedure 12(b)(6) and 8. They also moved for summary judgment under Rule 56, stating that if the Court considers matters outside the pleadings, the motion must be treated as one for summary judgment. Defs.' Mot. at 2 n.1, 9. As for their Motion to Dismiss under Rule 12(b)(6), Defendants argue that "Plaintiff fails to plausibly allege ownership in a valid copyright, as he

fails to identify any copyright registration number associated with his work or to append copies of any United States Certificates of Copyright Registration."  Defs.' Mot. at 1.  Next, they argue that "Plaintiff fails to plausibly allege that Defendants had access to his work," and finally that "Plaintiff fails to allege *any* facts supporting a claim of substantial similarity" between the two songs.  *Id.*  Defendants also argue that Plaintiff failed to allege facts to put each Defendant on notice of the copyright infringement claim made against them, in violation of Rule 8.  *Id.* at 14. Defendants' motion is now fully briefed before the Court.

**B.  Plaintiff's Communications with Defendant's Counsels and the Court**

Throughout the course of this litigation, Plaintiff has sent numerous inappropriate emails to Defendants' counsels.  On June 9, 2022, Defendants filed an [8] Emergency Motion for Protective Order indicating that "Plaintiff sent an email communication that appears to threaten the undersigned counsel and their families" as well as other threatening emails, including one suggesting that Defendants' counsel should be "capture[d]" and "detain[ed]."  ECF No. 8, at 1, 3.  Defendants asked the Court to order that Plaintiff must "stay more than 100 yards away from Defendants' and Defendants' counsels' places of business" and "stay more than 100 yards away from and have no contact with Defendant's counsel, except at judicially sanctioned events," among other requests.  *Id.* at 6.  Although the Court found Plaintiff's emails to be inappropriate and ill-advised, the Court denied without prejudice Defendants' [8] Emergency Motion, concluding that the emails did not justify the sanctions Defendants sought in their motion.  Order at 1–2, ECF No. 10.  In its order, the Court reminded Plaintiff of his duty to behave civilly and respectfully to opposing counsel.  *Id.* at 2.  The Court also stated that "[i]n the event that additional inappropriate communications and/or conduct are brought to the Court's attention, the Court may impose sanctions—including, if appropriate, termination of this case."  *Id.*

As exhibits to their Motion to Dismiss, Defendants attached additional emails from Plaintiff to Defendants' counsels.  ECF No. 43-2.  These emails include remarks such as "I could beat your F*%#ing a*%," sexually lewd and inappropriate language, and references to Defendants "getting KILLED metaphorically or realistically" and that Plaintiff "could… slow roast your defendants alive!"; Plaintiff also calls Defendants' counsels "illegitimate psycho," "you manipulated moronic retard monkey," and "you sickening virus".  *Id.* at 1–2, 4.

Plaintiff has also repeatedly attempted to submit communications to this Court, including *ex parte* letters addressed directly to Judge Kollar-Kotelly.  The Court first denied leave to file letters from Plaintiff on June 10, 2022.  On June 14, 2022, the Court pointed Plaintiff's attention to Local Civil Rule 5.1(a), which prohibits "correspondence… directed by [a] part[y]… to a judge."  Order, ECF No. 13.  The Court ordered that "absent extraordinary circumstances, Plaintiff shall **NOT** be permitted to file any other documents in this case unless ordered to do so by the Court."  *Id.* (emphasis in original).  Between that date and July 11, 2022, Plaintiff submitted approximately twenty additional letters to the Clerk's Office addressed to the Court.  Order, ECF No. 17.  These filings contained inappropriate language and information unrelated to the matter before the Court.  *Id.*  On July 13, 2022, the Court issued an order indicating that "[t]he Court ***shall not tolerate*** further efforts by Plaintiff to disregard this Court's orders and this jurisdiction's local rules.  **Further attempts to do so may result in *sua sponte* dismissal of this case**."  *Id.* (emphasis in original).  Despite the Court's warnings, Plaintiff has sent at least forty-nine letters to the Court.  These letters, most of which are addressed directly to Judge Kollar-Kotelly, include references to unrelated topics such as *Roe v. Wade*, COVID-19 and Bill Gates, and the U.S. government, as well as obscene and angry language.  The most recent of these letters included a sexually lewd photograph and inappropriate language.

In Defendants' Motion to Dismiss, Defendants ask that "the Court should exercise its inherent powers to dismiss the Complaint with prejudice in light of Plaintiff's repeated, inappropriate communications with the Court and Defendants' counsel." Defs.' Mot. at 16.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Federal Rule of Civil Procedure 8

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Rule 8(d) requires that the allegations within a pleading are "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, [those provisions] underscore the

emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (internal quotation marks and citations omitted).

The Rule 8 standard ensures that respondents receive fair notice of the claim being asserted so that they can prepare a responsive answer and an adequate defense. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (Sirica, J.). When a pleading "contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments[,]" it does not fulfill the requirements of Rule 8. *Jiggetts v. D.C.*, 319 F.R.D. 408, 413 (D.D.C. 2017) (KBJ), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017). "A confused and rambling narrative of charges and conclusions… does not comply with the requirements of Rule 8." *Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 169 (D.D.C. 2014) (RCL) (citation and internal quotation marks omitted). "Enforcing these rules is largely a matter for the trial court's discretion." *Ciralsky*, 355 F.3d at 669.

### III. DISCUSSION

#### A. Scope of Plaintiff's Pleadings

Typically, when deciding a motion to dismiss, "a court does not consider matters outside the pleadings." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2019); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and the Court of Appeals has ruled that a court must consider a *pro se* litigant's complaint "'in light of' all filings," *Brown v. Whole Foods Mkt. Grp.*,

*Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. U.S.*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *see also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (stating that the Court of Appeals has "permitted courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged").  This means that "courts may consider documents filed after a complaint when evaluating a motion to dismiss."  *Weise v. Fed. Bur. of Investigation*, No. 20-cv-2572 (JMC), 2022 WL 13947753, at *2 (D.D.C. Oct. 24, 2022). Such documents may include those in response to a motion to dismiss.  *See Brown*, 789 F.3d at 152; *Fillmore v. AT&T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) (JEB) ("the Court, as it must in a case brought by a pro se plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.").

In addition, a court may consider documents "incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint." *Ward*, 768 F. Supp. 2d at 119 (citing *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation and citation omitted)).  Such document must be "referred to in the complaint and integral to the plaintiff's claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (cleaned up).

The Court will consider Plaintiff's Motion for Ruling, which includes lyrics of the two songs referenced in Plaintiff's Complaint, *see* Pl.'s Mot. at 8–10; Compl. at 1–2, as part of Plaintiff's pleadings for the purpose of resolving Defendant's Motion to Dismiss.  The Court will consider Plaintiff's Response to Defendant's Motion to Dismiss as part of Plaintiff's pleadings as well.  The Court will therefore not analyze Defendants' motion as one for summary judgment under Rule 56 because the aforementioned documents are not matters outside the pleadings.

### B.  Motion to Dismiss Under Rule 12(b)(6)

Plaintiff's Complaint alleges a claim of copyright infringement, which Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To prevail on a claim of copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

In its analysis, the Court treats the Defendants collectively, as Plaintiff fails to plead factual allegations regarding how each named Defendant was specifically involved in infringing his copyrighted song.[2]  The Court finds that although Plaintiff alleges facts that satisfy the first element of a copyright infringement claim, he does not allege facts to satisfy the second element and therefore fails to demonstrate a plausible copyright infringement claim under Rule 12(b)(6).

### 1.  Copyright Ownership

Plaintiff satisfies the first element of copyright infringement by alleging facts to show ownership of a valid copyright.

"At the pleading stage, a party alleging copyright infringement need only claim ownership over the copyrighted work [and] that the party has registered the work in accordance with statute."  *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015) (TSC).  As Defendants note, Defs.' Mot. at 10, filing a certificate of copyright registration is considered an adequate allegation of a valid copyright registration.  17 U.S.C. § 410(c) ("[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.");

---

[2] Relatedly, see Section III.C for an analysis of Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 8.

*see also MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 202 (D.D.C. 2010) (EGS).  Courts in this circuit have also found that providing a copyright registration number is sufficient to allege ownership of a valid copyright.  *See Nichols v. Club for Growth Action*, 300 F. Supp. 3d 46, 51 (D.D.C. 2017) (RMC).

In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff wrote that he "take[s] ownership in the registration number PAu 4-101-997."  Pl.'s Resp. at 3.  A search on the United States Copyright Office website confirms that Plaintiff owns a copyright for a music work titled "Reach for the Skies" under that registration number, dated August 1, 2021.  *Public Catalog*, U.S. Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (type "PAu004101997" into search bar; select "Registration Number" in "Search by" field; select "Begin Search").  Accordingly, because Plaintiff provided a copyright registration number in his pleadings, the Court finds that Plaintiff has sufficiently alleged ownership of a valid copyright.

### 2.  Copying Plaintiff's Work

Plaintiff fails to allege facts demonstrating facial plausibility as to the second element of a copyright infringement claim: that Defendants copied constituent elements of his work.  In the absence of direct evidence of copying, a plaintiff must allege: "(1) that defendants had access to the copyrighted work, and (2) the substantial similarity between the protectible material in plaintiff's and defendants' works."  *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 40–41 (D.D.C. 2007) (PLF).  Plaintiff does not satisfy either component.

#### i. Access to Plaintiff's Work

First, Plaintiff fails to plead facts that, when accepted as true, show that Defendants had access to his song.  "[I]nfringement is impossible if the defendant has never even been exposed to the plaintiff's copyrighted work;" rather, the defendant must have had access to the plaintiff's

work. *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 118 (D.D.C. 2018) (TJK). "Access generally means that an infringer had a reasonable opportunity to hear the plaintiff's work and, thus, had the opportunity to copy" it. *Buchanan v. Sony Music Ent.*, No. 18-cv-3028 (KBJ), 2020 WL 2735592, at *4 (D.D.C. May 26, 2020) (internal quotation marks and citation omitted). A plaintiff can show this by either alleging that a particular chain of events was established between the plaintiff's work and defendant's access to that work, or that the plaintiff's work had been widely disseminated. *Id.* at *6. A particular chain of events can be shown where "the named [d]efendants specifically" received plaintiff's work. *Id.* Widespread dissemination hinges on the work's degree of commercial success and its distribution through mediums such as radio. *Id.* It is "well established that the mere fact that [plaintiff's] work was posted on the internet… is insufficient by itself to demonstrate wide dissemination.' *Id.* (internal quotation marks and citation omitted). Finally, "access may not be inferred through mere speculation or conjecture" and "the plaintiff must allege… circumstances that suggest a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Id.* at *4, *6 (internal quotation marks and citation omitted).

Plaintiff alleges that he had "dealings with [Defendants'] music label UMG" and that his song was "digitally released & distributed by Drake's label UMG." Compl. at 1. The "dealings," "release[]," and "distribut[ion]" to which Plaintiff refers was his uploading of the song "Reach for the Skies" to Spinnup. *See* Pl.'s Mot. at 2, 4, 11. Plaintiff also alleged that "a lyric sheet were [sic] also presented to the services of Universal Music Group along with the uploaded music." Pl.'s Resp. at 4.

Plaintiff's allegation that he uploaded "Reach for the Skies" with a lyric sheet to Spinnup is insufficient to show that Defendants had a reasonable opportunity to hear the song. First, the

song's presence on the Spinnup platform does not suffice as a chain of events between Plaintiff

and Defendants' access to the work.  Plaintiff's asserted facts establish only "the 'bare

possibility' that *someone* at UMB viewed Plaintiff's Work," Defs.' Mot. at 11, not that any of the

named Defendants listened to his song, viewed the lyrics, or otherwise were aware of "Reach for

the Skies."  Second, uploading the song to a public website does not suffice as widespread

dissemination absent any allegations of the song's commercial success or distribution.  *Cf.*

*Buchanan*, 2020 WL 2735592, at *6 (finding that plaintiff did not demonstrate defendant's

access to plaintiff's work where the "pleading also lacks any allegations with respect to the scope

of that song's dissemination after it was published online; that is, [plaintiff] does not allege that a

mass of people either purchased [the song] or listened to it.").  Accordingly, the Court finds that

Plaintiff fails to allege facts showing that Defendants had access to his song "Reach for the

Skies" because he does not cite facts to support a reasonable possibility that Defendants had the

opportunity to hear it. This failing alone would be sufficient to grant Defendants' Motion to

Dismiss.

### ii. Substantial Similarity to Plaintiff's Work

Plaintiff also fails to plead facts that, when accepted as true, show substantial similarity

between his song and Defendants' song.  Plaintiff alleges that he has "shown the remarkable

resemblances in work" and that Defendants "copy the blue-print of my song by saying all the

things exactly the way I have written them exactly and then… using the same lyrical words in

the same places I have used them intentionally even using the beat and functions I have sent to

them entirely."  Pl.'s Resp. at 3.  Plaintiff then notes an "uncanny resemblance within song

structure, sentence structure and lyrical significances within rhyme scheme, song presentation,

and the order in which each song lyrical work is presented in where, why and for what its presented." *Id.* at 7.

Specifically, Plaintiff presents the lyrics of "Reach for the Skies" and "Way 2 Sexy," which the Court takes as true. *Id.* at 5–6; Pl.'s Mot. at 8–9.  In his Motion for Ruling, Plaintiff compares specific lines at the end of each song, arguing that "the way the artist is moving" is similar in both.[3] *Id.* at 10.  Plaintiff also underlined, italicized, bolded, and used different color font for various lyrics in each song, but does not explain the significance of this formatting. *Id.* at 5–6; Pl.'s Mot. at 8–9.  The Court has therefore endeavored to compare the varied emphases across the two songs.  For example, Plaintiff underlined numerous words including "sexy," "yeah," "kickin'," and "okay" that are present in both his song and Defendants' song. *Id.*  He also underlined and placed in orange font the phrase "wa-pow" in his song and "(…whoa)(pow)" in Defendants'. *Id.* at 8–10.  As another example, Plaintiff emphasized in bold, italicized, and purple font the words "reckless," "restless," and "check this" in his song, and the words "requests," "unprotected," and "electric" in Defendants' song. *Id.*

Although the question of substantial similarity often involves fact-finding for a jury, copyright claims such as the one before this Court can, in certain instances, be resolved as a matter of law.  *See Sturza v. U.A.E.*, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("summary judgment for a copyright defendant remains appropriate if the works are so dissimilar as to protectible

---

[3] Plaintiff's lyrics are: "to the way I move!(wa-pow) I'm shooting for the stars, how's my aim!? Its a Big Bang!"  Defendants' lyrics are: "i been kickin' shit(whoa, whoa)(pow), might need a prosthetic(yeah) I pray to the chopper under my pillow, tooth fairy(woo)".  Plaintiff argues that "clearly here is where the infringement is that of where he speaks on the way he is moving; by prosthetic leg, as he prays to a chopper(gun) under said pillow, being a comparison of Angelou Skywalker shooting for the stars like a chopper(gun) would where one may find articles of a Big Bang(big bang meaning recoil of an a explosion like a gun would or the term for the beginning of the universe) versus a chopper(chopper meaning gun) under a pillow, an article on the tooth fairy."  Pl.'s Mot. at 10.

elements that no reasonable jury could find for the plaintiff on the question of substantial similarity"); *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390–91 (D.D.C. 2015) (APM) (at the motion to dismiss stage, "conclud[ing] that this court is capable of concluding as a matter of law… that [two songs] are not substantially similar" and holding that "Plaintiff's copyright infringement claim therefore is dismissed").  At the motion to dismiss stage, "a district court may only decide whether works are substantially similar this early in the litigation if (1) both the copyrighted and allegedly infringing works are in the record and (2) no trier of fact could rationally determine the [works] to be substantially similar." *Buchanan*, 2020 WL 2735592, at *8 (internal quotation omitted).  Regarding (1), the lyrics of both the copyrighted work, "Reach for the Skies," and the infringing work, "Way 2 Sexy," are in the record, as Plaintiff presented them in his pleadings. *See* Pl.'s Resp. at 5–6; Pl.'s Mot. at 8–10.  In receiving these lyrics—replete with varied formatting, as mentioned above—the Court has the proper information with which to conduct the following analysis.  As for (2), the Court now engages in an analysis of substantial similarity with that standard in mind, and that "lack of… any allegation that the works are so strikingly similar so as to preclude the possibility of independent creation" can be grounds for dismissal. *Buchanan*, 2020 WL 2735592, at *8 (internal quotation marks and citation omitted).

Here, the Court finds that Plaintiff's song lacks substantial similarity to Defendants' song. "In determining whether the works are substantially similar, the court must first identify which parts of the artist's work, if any, are protectible[,] and second, whether an ordinary observer could conclude that 'the defendant[s] unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Scott-Blanton v. Universal City Studios Prods. LLLP*, 539 F. Supp. 2d 191, 197 (D.D.C. 2008) (RMU) (quoting *Sturdza*, 281 F.3d at 1296).

As for the first element of this test, individual words and short phrases are not protectible. 37 C.F.R. § 202.1(a); *see also Prunte v. Universal Music Grp.*, 699 F. Supp. 2d 15, 25 (D.D.C. 2010) (PLF) (stating that "a word or common phrase" in a song is a unprotectible element). More specifically, "[t]he use of a cliché short phrase in a hip-hop song treating a very common subject cannot be said to create a distinctive musical effect" to constitute protectible work. *Id.* In addition, a common rhyme scheme is not a protectible expression. *Id.* at 29.

The common short words that Plaintiff emphasizes in both his and Defendants' songs are not protectible elements of his work.  They are similar to—and in some instances, more ubiquitous than—other words and phrases that courts have held not to be protectible.  For example, a "phrase five syllables long" about "a person reaching out and asking for help or counsel from a god;" the phrase "so high;" the words "smoke" and "drink;" the word "king;" and the phrase "get it poppin'" were held to not be protectible expressions. *Prunte*, 699 F. Supp. 2d at 26–27.  In another case, the court found that "neither the song title 'The Keys to the Kingdom' nor the phrase 'keys to the kingdom' is copyrightable material." *Prunty*, 130 F. Supp. 3d at 390 (ruling on motion to dismiss).  Here, common words like "sexy," "yeah," "kickin'," "okay," "action," "scenes," "where," "been," "today," "make," and "hundreds," among others that Plaintiff emphasized, are not protectible, nor is a phrase like "wa-pow".  Additionally, to the extent that Plaintiff was identifying a common rhyme scheme when he emphasized the words "reckless," "restless," and "check this" in his song, and the words "requests," "unprotected," and "electric" in Defendants' song, that too is not a protectible element of his work.  Plaintiff does not present facts that any other part of "Reach for the Skies"—the beat, song structure, sentence structure, or anything else—is protectible.

Assuming *arguendo* that Plaintiff had identified protectible elements of his song "Reach for the Skies," Plaintiff does not satisfy the second element of substantial similarity, which "rests on whether the average 'lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003)).  This element depends "on the 'total concept and feel' of the works, notwithstanding any differences between the copyrighted and allegedly infringing work." *Gaines v. D.C.*, 961 F. Supp. 2d 218, 223 (D.D.C. 2013) (BJR) (citing *Whitehead*, 315 F. Supp. 2d at 8) (ruling on motion to dismiss). Altogether, a "random" assortment of "similarities scattered throughout the works… does not support a finding of substantial similarity where [the] works as a whole are not substantially similar." *Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 50 (D.D.C. (PLF) (internal quotation marks and citation omitted).

Here, the Court finds that the total concept and feel of the two songs have nothing in common such that no trier of fact could rationally determine them to be substantially similar. *See Buchanan*, 2020 WL 2735592, at *8.  Plaintiff's conclusory allegations of "uncanny resemblance" and that the Defendants were "saying all the things exactly the way I have written them," Pl.'s Resp. at 3, 7, does not constitute similarity to state a plausible claim for copyright infringement.  In presenting the lyrics of "Reach for the Skies" and "Way 2 Sexy," Plaintiff has cherrypicked random words that appear in both songs.  As mentioned above, Plaintiff underlined words such as "sexy," "okay," "action," "been," and "hundreds" that are present in both his song and Defendants' song.  Pl.'s Mot. at 8–9.  The longest phrase shared by both songs is "yeah, yeah." *Id.* at 8–10.  That both songs use these random, common words—the longest of which is a repeated two-word phrase—is insufficient to establish similarity. *See Prunty*, 130 F. Supp. 3d

at 390 (ruling on a motion to dismiss, stating that a court may "conclude[] that, other than… [a certain] phrase… appearing in both songs' lyrics, they bear little resemblance to one another and thus are not 'substantially similar.'").

In addition, Plaintiff's cherrypicked words are presented in different contexts in the two songs. For example, Plaintiff underlines the word "like" in both songs. In his song "Reach for the Skies," the word "like" is used as a conjunction: "Supercalifragilisticexpialidocious <u>like</u> how real it feels… Understand me, health is <u>like</u> a true reflection of reality… Talking <u>like</u> she Nicki Nicki…<u>Like</u> stars when you shine…". *Id.* at 8. In Defendants' song "Way 2 Sexy," the word "like" is primarily used as a verb: "I <u>like</u> it crowded… I <u>like</u> it crowded… Oh, you <u>like</u> the boy? Well tell me what you <u>like</u> about him…" *Id.* at 9; *but see id.* (using "like" as a conjunction in one instance: "… they look like a switch…"). Elsewhere, Plaintiff underlines the word "scenes" and "scene" in each song, but the words are used in dissimilar contexts. Plaintiff writes "Couture vogue magazines, romantic movie <u>scenes</u>," while Defendants write "Did a 360 windmill when I left the <u>scene</u>." *Id.* at 8–9. Therefore, not only are the alleged similarities just random, common words scattered throughout each song, but those words are used in different ways, further establishing a lack of similarity.

The songs also appear to have unrelated subject matters or themes. While Plaintiff's "Reach for the Skies" is about Plaintiff "Angelou Skywalker shooting for the stars," per Plaintiff's own description, *id.* at 10, Defendants' "Way 2 Sexy" appears to be about the singer's sexiness. The Court also finds that the two songs lack similarity with respect to sentence structure, overall song structure, or anything else. Altogether, an average lay observer would not recognize Defendants' song as having copied Plaintiff's, as the two songs do not have a similar

concept and feel, and any similarities are only random words scattered throughout.  Plaintiff has failed to allege facts showing any real similarity.

*        *        *

In sum, the Court finds that Plaintiff did allege ownership of a valid copyright.  However, Plaintiff failed to allege facts showing that Defendants had access to his song "Reach for the Skies" nor that there is substantial similarity between "Reach for the Skies" and Defendants' song "Way 2 Sexy."  Therefore, Plaintiff did not demonstrate the second element of a copyright infringement claim sufficient to state a claim for relief, and the Court grants Defendants' Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6).

### C.  Motion to Dismiss Under Rule 8

Defendants also move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 8, arguing that Plaintiff "fails to allege any facts concerning the ***specific*** acts allegedly committed by ***each*** Defendant and how each Defendant's actions constitute copyright infringement."  Defs.' Mot. at 13–14 (emphasis in original).

Rule 8 requires that a plaintiff provide each defendant with "fair notice of each claim and its basis," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1118 (D.C. Cir. 2000) (citation omitted), so as to allow defendants to prepare an "adequate defense," *Penkoski v. Bowser*, 486 F. Supp. 3d 219, 239 (D.D.C. 2020) (TNM).  "[E]ven a pro se complaint is subject to dismissal if the pleading fails reasonably to inform the adverse party of the asserted cause of action."  *Brown*, 75 F.R.D. at 498.  "[A] plaintiff cannot satisfy the minimum pleading requirements under Rule 8… by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."  *Toumazou v. Turkish Republic of N. Cyprus*, 71. F. Supp. 3d 7, 21 (D.D.C. 2014) (PLF) (internal quotation marks and citation omitted).  Additionally, a plaintiff

must present "*some* information about the circumstances giving rise to the claims,"

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008)

(emphasis in original); *see also Brown*, 75 F.R.D. at 498 (finding fault where plaintiff did not

allege "with even modest particularity the dates and places of the transactions of which he

complains"), such as facts concerning specific actions taken by defendants, *see Iqbal*, 556 U.S. at

678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully harmed-me

accusation).

      Plaintiff's Complaint names Aubrey Graham, UMG, Republic Records, and OVO as

Defendants but makes little, if any, distinction in terms of each parties' role in the alleged

copyright infringement.  The only references to any Defendants by name are when Plaintiff

mentions his alleged "dealings with… music label UMG," that his song was "distributed by

Drake's label UMG," and references to "a song released by Drake."  Compl. at 1–2.  Plaintiff's

later pleadings also do not specify each Defendants' role in the alleged infringement; the only

mentions are referencing UMG's relationship to Spinnup and noting that UMG is Drake's "music

distributor & collaborator."  Pl.'s Mot. at 2–3; Pl.'s Resp. at 4.  Plaintiff alleges no facts

regarding individual Defendants' actions giving rise to copyright infringement.  Notably, Plaintiff

does not mention Defendants OVO or Republic Records anywhere in his pleadings, providing

those Defendants with absolutely no notice as to the specific allegations against them.  In sum,

Plaintiff fails to plead factual allegations regarding how each named Defendant was specifically

involved in infringing on Plaintiff's song "Reach for the Skies."  For this reason, the Court finds

that Plaintiff fails to satisfy the pleading requirements established by Rule 8, which is additional

grounds for granting Defendants' Motion to Dismiss.

      The Court also notes that while the Complaint lists Drake and OVO as Defendants,

Plaintiff does not appear to have attempted service on either of these Defendants; rather, Plaintiff's Proof of Service indicates a summons for "Aubrey Graham – Drake, by serving UMG." *See* ECF No. 3; Def.'s Mot. at 4 n.4 (noting that UMG is not authorized to receive service of process for Drake or OVO).

### D. Plaintiff's Communications

Finally, the Court discusses Plaintiff's communications with both Defendants' counsels and the Court.

To begin, although *pro se* litigants are held to a more lenient standard than those represented by counsel, they must nevertheless comply with the Federal Rules of Civil Procedure, Local Rules of Civil Procedure, and court orders. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987) (Penn, J.); *Garlington v. D.C. Water & Sewer Auth'y*, 62 F. Supp. 3d 23, 27 (D.D.C. 2014) (BAH).

Plaintiff has violated these rules and orders myriad times, and the Court has made Plaintiff aware of his violations and the potential repercussions. The Court notified Plaintiff that inappropriate communications with Defendants' counsels could lead to "sanctions—including, if appropriate, termination of this case," Order at 2, ECF No. 10, yet Plaintiff continued to send counsels emails with threatening, obscene, and inappropriate language as well as sexually lewd references. The Court has also issued numerous orders instructing Plaintiff to stop submitting letters to the Court, including an order in which the Court warned Plaintiff that "efforts by Plaintiff to disregard this Court's orders and this jurisdiction's local rules… may result in *sua sponte* dismissal of this case." Order, ECF No. 17. Nevertheless, Plaintiff continued to send frivolous letters to the Court—for a total of nearly fifty letters—that were addressed directly to Judge Kollar-Kotelly, discussing unrelated topics and filled with inappropriate language.

"It is beyond dispute that courts have the inherent power to sanction parties who disobey judicial orders and engage in bad-faith conduct that violates the integrity of the judicial process." *Pinson v. U.S. Dep't of Justice*, 104 F. Supp. 3d 30, 36 (D.D.C. 2015) (RC).  And while "dismissal with prejudice is the exception, not the rule, in federal practice because it 'operates as a rejection of plaintiff's claims on the merits and [ultimately] precludes further litigation of them,'" *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (alteration in original (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)), "[i]n rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct)," *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998).

The Court finds that in disobeying the Court's orders and engaging in bad faith conduct by sending both inappropriate emails to Defendants' counsels and inappropriate letters to Judge Kollar-Kotelly, Plaintiff's repeated and blatant misconduct constitutes additional grounds for dismissal of Plaintiff's Complaint—significantly, dismissal with prejudice.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that Defendants' [43] Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE in its entirety.  The Court DISMISSES Plaintiff's Complaint under Rule 12(b)(6) and Rule 8 and, as additional grounds, DISMISSES WITH PREJUDICE Plaintiff's Complaint as a sanction for Plaintiff's repeated misconduct.  An appropriate Order accompanies this Memorandum Opinion.

The Clerk of Court is instructed to mail a copy of this Memorandum Opinion and accompanying Order to Plaintiff's address of record.

Dated: December 1, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

21